UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

01 AUG -3 PM 2: 41

. . . . . . . . . . . . . . . . COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JERRY JAMES, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 00-B-0640-NW |
| | } | |
| SONJA JAMES; J.T. NEWTON, in his | } | **ENTERED** |
| official capacity as Clerk of the Circuit | } | |
| Court of Franklin County; | } | AUG 3 2001 |
| COMMUNITY SPIRIT BANK; | } | |
| CITIZENS BANK OF FRANKLIN | } | |
| COUNTY, | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

Currently before the court are the parties' cross Motions for Summary Judgment.

Plaintiff Jerry James ("plaintiff" or "Mr. James") filed a declaratory judgment action in the

Circuit Court of Franklin County, asking the court to declare the interests of his wife, Sonja

James ("defendant" or "Ms. James"), in the $4,570,661.52 judgment he received in the action

styled *James v. James,* 768 So. 2d 356 (Ala. 2000) ("shareholder action"). Specifically plaintiff

asked the court to "find as a matter of law . . . that he is entitled to all of the funds of the verdict

and against the whole world and that no other party, including Sonja James, is entitled to any part

thereof;" to "declare that the garnishments served on other parties are void as a matter of law and

may not be enforced;" and to award "attorney fees under Rule 11 of the Alabama Rules of Civil

Procedure for the willful abuse of process for filing wrongful garnishments." (Petition for

Declaratory Judgment in Favor of Jerry James over Disbursement of Judgment Proceeds at ¶¶ 17,

21, and 22.) The defendants then removed the declaratory judgment action to this court on

29

March 13, 2000.[1] The case is before the court on cross Motions for Summary Judgment. Upon

consideration of the record, the submissions of the parties, the arguments of counsel, and the

relevant law, the court is of the opinion that plaintiff's Motion is due to be granted and

defendant's Motion is due to be denied.

## I.  FACTUAL SUMMARY

Mr. James and his brother, Thomas James, were business partners from 1972 until

approximately 1995, and were involved in several business ventures in the State of Alabama,

including the operation of Indies House, Inc. ("Indies") and Franklin Homes, Inc. ("Franklin").

(*See* PX[2] I D at 264-65; PX I F at ¶ 3; PX II A at 227; DX III 3 at 221); *see also James,* 768 So.

2d at 357-58. On March 2, 1995, Mr. James, as a minority stockholder in Indies, filed a minority

---

[1]  This case was removed from the Circuit Court of Franklin County by defendant Sonja
James.  Also joined in this action as defendants are J.T. Newton in his official capacity as the
Clerk of the Circuit Court of Franklin County, Community Spirit Bank, and Citizens Bank of
Franklin County.  No one has argued that the defendant banks and defendant Newton are
anything other than nominal parties.  The court will render moot any claims against these
defendants.

[2]  Ms. James filed a Motion for Summary Judgment on June 14, 2000, with attached
exhibits.  This evidence will be referred to as "DX I," followed by the corresponding tab letter.
Mr. James then filed Plaintiff Jerry James' Evidentiary Submission in Opposition to Defendant
Sonja James' Motion for Summary Judgment and Brief in Support of Cross Motion for Summary
Judgment on July 10, 2000.  This evidence will be referred to as "PX I," followed by the
corresponding tab letter.  On December 13, 2000, Ms. James filed Defendant's Motion for Leave
to Submit this Supplemental Note of Submission in Support of Motion for Summary Judgment,
with the Affidavit of Joey Newton, Clerk of Court for the Circuit Court of Franklin, County,
Alabama, attached thereto as Exhibit A.  This evidence will be referred to as "DX II."  On
January 8, 2001, Ms. James filed Sonja James' Second Supplemental Submission of Evidence in
Support of Motion for Summary Judgment and in Response to Plaintiff Jerry James' Motion for
Summary Judgment.  This evidence will be referred to as "DX III," followed by the
corresponding tab number.  On January 16, 2001, Mr. James filed Plaintiff's Evidentiary
Submission in Support of Reply in Opposition to Defendant's Response to Plaintiff's Motion for
Summary Judgment.  This evidence will be referred to as "PX II," followed by the corresponding
tab letter.

stockholders' derivative action[3] against his brother, Thomas James in the Circuit Court of Franklin County, Alabama. (*See* PX I E.) Mr. James also asserted individual claims against his brother. *See id.* Mr. James alleged that Thomas James violated his fiduciary responsibility as President of Indies. *See id.* Mr. James owned approximately forty-one percent of Indies stock and Thomas James owned approximately fifty-six percent of Indies stock. (*See* PX I D at 265; PX II A at 33-34, 221.) Mr. James alleged in the Complaint against Thomas James that for at least five years prior to the filing of the complaint, Thomas James paid himself excessive compensation and committed various other acts which breached his fiduciary duty to minority stockholders and caused Mr. James, as a minority stockholder, to lose the value of his investment in Indies. (*See* PX I E at ¶¶ 5-10.)

Thomas James filed a derivative counterclaim on behalf of Franklin. (*See* PX I F.) Mr. James was the majority shareholder in Franklin, owning approximately fifty-seven percent ownership of the stock, and Thomas James was a minority shareholder, owning approximately thirty-one percent of the stock. (*See* PX II A at 33, 221; PX I F at 7); *see also James v. James*, 768 So.2d at 358.

On May 16, 1996, defendant filed a Petition for Divorce in the Circuit Court of Colbert County, Alabama, seeking a divorce from plaintiff. (*See* DX I A.) Plaintiff and defendant had been married for approximately twelve years. (*See* DX I A at ¶ 2.) Defendant alleged in her petition that plaintiff owned mobile home manufacturing plants, as well as other assets, which were all part of the marital estate, and sought one-half of all of the real and personal property

---

[3] As noted above, this action will be referred to throughout this Memorandum Opinion as the "shareholder action."

3

owned by plaintiff. (*See id.* at ¶¶ 6, e.)  The divorce court found that (1) the antenuptial agreement between Mr. James and Ms. James had been rescinded by a subsequent agreement, and was no longer in effect; (2) all non cash property was to be liquidated and sold at a private sale or auction; (3) pursuant to that sale, Ms. James was to receive one-third of the marital estate, including cash property, and retirement accounts, and Mr. James was to receive two-thirds of the marital estate; and (4) Ms. James was entitled to $100,000.00 in attorneys fees. (DX I B; PX I A.)  The Circuit Court of Colbert County, Alabama entered a divorce decree on March 17, 1998, which stated in part:

> [A]ll properties consisting of stock, corporations, land, personal property and anything other than cash shall be sold by private sale or public auction.
> . . .
>
> [A]ll remaining monies which shall consist of any savings accounts, retirement accounts, IRA's or otherwise, one-third (1/3) of the same shall be paid to Sonja M. James for a full and complete settlement of all claims by her against Jerry James, which shall include all past, present or future alimony.

(DX I B at unnumbered 3; PX I A at unnumbered 3.)  The divorce decree did not implicitly or expressly award Ms. James an interest in pending lawsuits or future proceeds.

Mr. James appealed to the Alabama Civil Court of Appeals, which affirmed the trial court's ruling regarding the antenuptial agreement; the grounds for divorce; and the ruling regarding the liquidation and sale of all noncash marital property, with the exception of personal property. *See James v. James*, 764 So. 2d 549 (Ala. Civ. App. 1999).  The appellate court reversed the liquidation of the parties' personal property, the award of one-third of Mr. James's retirement account to Ms. James, and the award of $100,000.00 in attorneys fees to Ms. James. *Id.*

4

Ms. James filed a writ of certiorari with the Alabama Supreme Court regarding the sole issue of attorney's fees. *See Ex parte James,* 764 So. 2d 557 (Ala. 1999).  On November 19, 1999, the Alabama Supreme Court reversed the appellate court's finding that the trial court abused its discretion in awarding Ms. James $100,000 in attorneys fees. *Id* at 560.

In September, 1998, approximately seven months after the divorce decree was entered, and approximately three years and seven months after Mr. James filed the shareholder action, the jury returned a verdict in the shareholder action awarding compensatory damages to Mr. James and in the amount of $4,213,283.10. (*See* PX I A; DX I B; DX I H); *see also James,* 768 So. 2d at 357.  The jury also found in favor of Mr. James on Thomas James's counterclaim. *See id.* at 357-58.[4]

On January 28, 2000, the Alabama Supreme Court affirmed the judgment in the shareholder action, with the exception of the attorneys' fees. *See James,* 768 So. 2d 356.  The Alabama Supreme Court noted that Mr. James asserted individual claims as well as derivative claims, but held that his claims were only properly asserted as derivative claims based upon his status as a shareholder. *See id.* at 359 (concluding that "any claims made by Jerry should have been derivative claims . . . . Jerry had no valid individual claims").  Nevertheless, the Alabama Supreme Court ordered that the judgment be paid directly to Mr. James because Indies was in the process of being liquidated and it would be "more equitable to award Jerry the portion of the money damages that he would have rightly received had the money been in the treasury of Indies House at the time it was liquidated." *Id.*  The court found that Mr. James "could collect on these

---

[4] Thomas James subsequently sold Indies to Charming Castle, L.L.C. on December 23, 1998. (*See* PX I H.)

5

derivative claims, and the jury could determine the amount of damages by multiplying the total

amount of loss caused by Thomas by each act of wrongdoing against Indies House, by Jerry's

percentage of ownership (41.5%), and then adding these amounts together to reach the total

amount of damages." *Id.* at 359-60. The court then concluded that the "portion of the judgment

awarding the compensatory damages to Jerry individually [was due to be] affirmed." *Id.* at 361.

On February 10, 2000, defendant filed a Writ of Garnishment against plaintiff, claiming

that she is entitled to one-third of the judgment in the shareholder action. (*See* PX I I.) On April

12, 2000, following affirmation of the judgment by the Alabama Supreme Court, Thomas James

paid to Joey Newton ("Newton"), as Clerk of the Circuit Court of Franklin County, Alabama, the

sum of $4,570,661.52, including interest, as directed by the terms of the judgment. (*See* PX I J;

DX I J; DX II.) Newton then deposited those funds in an interest bearing account under his

control pending resolution of this action. (*See* DX II.) On August 29, 2000, the Circuit Court of

Franklin County ordered the release of $3,047,107.68 out of the amount paid into the court by

Thomas James. (*See id.*) This amount represents two-thirds of the judgment (plus interest

accrued until April 12, 2000), over which the court found the wife had no claim. (*See id.*) Thus,

$1,523,553.88, plus interest accrued after April 12, 2000, remains in Newton's custody. (*See id.*)

On October 2, 2000, after this suit was filed, plaintiff and defendant entered into

mediation and a subsequent Settlement Agreement regarding the court-ordered division of

marital assets. (*See* DX III 1.) This agreement states:

> The Husband and the Wife agree that this Settlement Agreement resolves all
> disputes between the parties, regarding the above divorce case, including Wife's
> claims to Husband's assets, with the exception of the case now pending in the
> United States District Court, Northern District of Alabama, Northwestern
> Division styled Jerry James vs. Sonja James, Case Number CV-00-B-0640-NW,

6

regarding a Declaratory Judgment as to the entitlement of Sonja James to one-third of the Judgment, plus accrued interest thereon, heretofore rendered on behalf of Jerry James vs. Thomas James, Circuit Court, Franklin County, Alabama, Case Number CV-95-048, and the underlying garnishment issued out of the Circuit Court of Colbert County, Alabama against such judgment to the clerk of the Circuit Court of Franklin County, Alabama.  Such case shall be unaffected in any way by this Settlement Agreement and the parties agree that they will be bound by the decision of the United States District Court, however either party may appeal such decision of the United States District Court should they be aggrieved by such decision of such court.  Husband shall have no obligation for Wife's attorney's fees in such action.

(*Id.* at 2-3.)

Ms. James alleges that she is entitled to one-third of the proceeds from the judgment rendered in the shareholder action because Mr. James's cause of action against Thomas James was a marital asset and subject to division.  (*See* Narrative Summary of Facts, Brief and Argument of Defendant, Sonja James in Support of Her Motion for Summary Judgment  ("Def.'s Br. in Support") at 8-14; Defendant Sonja James' Opposition to Plaintiff Jerry James' Motion for Summary Judgment ("Def.'s Br. in Opposition") at 2-12; "Reply" Brief in Support of Defendant Wife's Motion for Summary Judgment ("Def.'s Reply in Support") at 2-5.)  Ms. James contends that on May 16, 1998, the date on which she filed for divorce, the derivative action filed by Mr. James on March 2, 1995, was an unliquidated inchoate asset of the marital estate.  (Def.'s Br. in Support at 9.)  Ms. James asserts that "a finding for Jerry requires this court to declare the divorce decree ambiguous and to interpret it as intending to specifically exclude an award of the judgment proceeds."  (Def.'s Br. in Opposition at 15.)  Further, Ms. James alleges that this action "represents nothing more than an impermissible collateral attack on a valid judgment," and is "barred by *res judicata* and collateral estoppel."  (*Id.* at 12-14.)

7

Mr. James contends that Ms. James is not entitled to any portion of the judgment in the shareholder action because (1) the final divorce decree represents a release of all later litigation, (*see* Plaintiff Jerry James' Summary of Facts, Opposition to Defendant Sonja James' Motion for Summary Judgment, And Brief in Support of Cross Motion for Summary Judgment ("Pl.'s Br. in Opposition") at 5-8), (2) a mere expectancy falls outside the marital property and is not subject to division by the trial court, (*see id.* at 8-15), (3) the judgment of the shareholder derivative action was not used for the common benefit of the parties during the marriage, and therefore is not subject to division by the court, (*see id.* at 15-16; Plaintiff's Reply in Opposition to Defendant's Response to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply in Support") at 8-9), (4) by testifying against plaintiff in the shareholder action, defendant waived her claim against any judgment in the plaintiff's favor, (*see* Pl.'s Br. in Opposition at 16-17; Pl.'s Reply in Support at 9-10), (5) public policy dictates that defendant not be allowed to garnish the judgment, (*see* Pl.'s Br. in Opposition at 17-18), (6) defendant failed to reserve her right to claim entitlement to share in the potential judgment, (*see* Pl.'s Reply in Support at 1-4), (7) the trial court awarded judgment to Mr. James individually, not the corporation, and the Alabama Supreme Court affirmed that award, (*see id.* at 4-5), and (8) defendant's claim of entitlement to the proceeds of the judgment are an impermissible collateral attack on a valid judgment, (*see id.* at 5-6).

The court is of the opinion that Ms. James is not entitled to proceeds from the judgment rendered in the shareholder action because (1) Ms. James knew of the pending litigation at the time of the divorce decree and failed to reserve a right to claim entitlement thereby releasing any future claim of entitlement to the proceeds she might have; (2) Ms. James's claims in this case constitute a collateral attack on a valid state court judgment that this court does not have the right

8

to go behind or rewrite; (3) the wife's claims to the judgment proceeds are barred by res judicata; (4) at the time of the divorce decree, the pending litigation was a mere expectancy and not subject to division by the court; and (5) the damages in the shareholder action were awarded to the Mr. James individually.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.   DISCUSSION

### A.   <u>Rules of Statutory Construction</u>

Ms. James asserts that "a finding for Jerry requires this court to declare the divorce decree ambiguous and to interpret it as intending to specifically exclude an award of the judgment proceeds." (Def.'s Br. in Opposition at 15.)

Under Alabama law, a divorce decree is to be interpreted or construed like other written instruments. *Ex parte Littlepage,* 2001 WL 128762, at * 4 (Ala. Feb. 16, 2001); *Grizzell v. Grizzell,* 583 So. 2d 1349, 1350 (Ala. Civ. App. 1991) (citing *Fox v. Dick,* 389 So. 2d 940 (Ala. Civ. App. 1980)). If there is any uncertainty in the divorce decree, the court must construe the decree so as to express the intent of the parties, and such intent can be derived from the provisions of the instrument. *See Littlepage,* 2001 WL 128762, at * 4. "[I]f an instrument is unambiguous, its construction and effect are questions of law which may be decided by summary judgment." *Id.* at 310-11.

Whether an agreement is ambiguous is a question of law for the trial court. *Id.* An instrument is ambiguous if it is reasonably susceptible to more than one meaning, or when construed by its usual terms, more than one reasonable meaning emerges. *Id; see also Blue Cross and Blue Shield of Alabama v. Beck,* 523 So. 2d 121, 124 (Ala. Civ. App. 1988). However, when the provisions are certain and clear, it is the duty of the trial court to analyze and determine the meaning of the provisions. *Littlepage,* 2001 WL 128762, at * 4. If a provision is deemed ambiguous, the court may admit parol evidence to explain or clarify the ambiguity. *See, e.g., Greene v. Hanover Ins. Co.,* 700 So. 2d 1354, 1356 (Ala. 1997).

10

The court is of the opinion that the divorce decree is not ambiguous.  The pertinent

provisions of the divorce decree are certain, clear, and unambiguous, and are susceptible to only

one reasonable interpretation.  There is no reference whatsoever to the pending shareholder

litigation contained anywhere within the four corners of the divorce decree, which leads to the

conclusion that the divorce court did not intend for the judgment proceeds to be included in the

marital estate.

> Further,

> a well-established rule of statutory construction provides that when a statute
> specifies certain elements, it must be construed as excluding those elements not
> specified. . . .  That principle is equally applicable to the interpretation of
> contractual language, so that the specific mention of certain items implies the
> exclusion of those items not mentioned.

*Waller v. Morgan,* 656 So. 2d 835, 837 (Ala. Civ. App. 1991) (citing *Ex parte Haponski,* 395 So.

2d 971, 972 (Ala. 1981) and *Builders Transport, Inc. v. Jochum,* 585 So. 2d 52, 53 (Ala. Civ.

App. 1991)).  Additionally, in the context of a consent decree, the United States Supreme Court

stated:

> [T]he decree itself cannot be said to have a purpose; rather the parties have
> purposes, generally opposed to each other, and the resultant decree embodies as
> much of those opposing purposes as the respective parties have the bargaining
> power and skill to achieve.  For these reasons, the scope of a consent decree must
> be discerned within its four corners, and not by reference to what might satisfy the
> purposes of one of the parties to it.

*U.S. v. Armour & Co.,* 402 U.S. 673, 681-82 (1971).  Applying these principles of construction,

the court is of the opinion that the omission of the possible judgment proceeds in the shareholder

action from the specific itemization of marital property contained in the divorce decree compels

the conclusion that the proceeds were not intended to be included in the items to be awarded to

11

Ms. James.[5] Because the divorce decree did not reserve a right for Ms. James to claim

entitlement to any future judgment, and because Ms. James did not request such a right, such

proceeds are excluded from the marital estate and are not subject to distribution between the

parties.

Even though the court concludes that the divorce decree is not ambiguous and parol

evidence is not admissible, there is an additional issue the court must address.  In support of her

contention that by virtue of the award in the divorce, she is entitled to one-third of the proceeds

from the judgment rendered in the shareholder action, Ms. James submitted the affidavit of the

judge who rendered the divorce decree, Judge N. Pride Tompkins.  (*See* DX III 2.)[6]  There is

---

[5]  The court notes that Ms. James had several opportunities during the course of the divorce action to reserve a claim to the possible judgment in the shareholder action, but she failed to raise any concerns regarding the possible judgment either to the divorce court or the appellate courts.  In fact, in valuing the Indies stock during the divorce action, Ms. James's expert did not consider the pending lawsuit in any way.  (*See* PX II A at 291-332.)  Such consideration would have also required a consideration of the counterclaims against Mr. James.  Ms. James knew of the pending shareholder action at the time she negotiated and executed the final divorce decree, yet she did not request a reservation of any rights to the possible proceeds in the shareholder action.  Although not relevant to the court's decision, in all probability Mr. James is correct in asserting that Ms. James did not reserve a right to the pending action between the Mr. James and Thomas James because she feared sharing in potential liability (or loss of value to the marital assets) if the counterclaims against Mr. James were successful.

[6]  Judge Tompkins stated in relevant part:

Rather than attempt to make an equitable division of specific items of marital property of which I could not reasonably ascertain the full and fair value, I instead ordered that all property, including stock in corporations, be sold at private sale or auction at an unspecified time in the future, and that Sonja James be awarded one-third of the proceeds of that sale. . . . The wording of the . . . order I drafted and signed was, in its effect, a reservation by which I intended to include the later results of the derivative action. . . . Further, I intended my insertion of the words "or otherwise" in the last full paragraph of my order . . . to be an all inclusive phrase emphasizing my intent that Sonja James receive the full and fair value of the eventual sale of the stock of Jerry James in Indies House, Inc[.]  The failure to

12

considerable doubt, however, as to whether a judge may testify in a subsequent proceeding as to

his mental processes in rendering his judicial decision. In *Fayerweather v. Ritch*, 195 U.S. 276

(1904), the United States Supreme Court held that a trial judge was incompetent to testify about

the basis of his earlier decision for the purpose of determining whether the issue was actually

litigated and therefore barred by the doctrine of res judicata. The Court stated:

> [T]he testimony of the trial judge, given six years after the case had been disposed
> of, in respect to the matters he considered and passed upon, was obviously
> incompetent. . . . [N]o testimony should be received except of open and tangible
> facts,--matters which are susceptible of evidence on both sides. **A judgment is a**
> **solemn record. Parties have a right to rely upon it. It should not lightly be**
> **disturbed, and ought never to be overthrown or limited by the oral testimony**
> **of a judge or juror of what he had in mind at the time of the decision.**

*Id.* at 306-07 (emphasis added). Other courts have echoed this concern regarding the

examination of the mental processes of a judge in a variety of circumstances. *See, e.g., In the*

*matter of Rufus Cook*, 49 F.3d 263, 265-66 (7th Cir. 1995) ("Inquiry beneath the surface of a

judge's opinion is forbidden."); *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994) ("The inner

workings of administrative decision making processes are almost never subject to discovery. . . .

Clearly, the inner workings of decision making processes by courts are kept in even greater

confidence."); *Proffitt v. Wainwright,* 685 F.2d 1227, 1255 (11th Cir. 1982) ("The district court

relied on statements by [the judge] who presided at appellant's trial, to the effect that he did not

use [a doctor's] report in imposing sentence. The court's reliance on this testimony is flawed in

------

> include the judgment proceeds of the derivative action would be a deprivation of
> what I had intended, as reflected in my order for Sonja James to have as a
> deserved and significant part of her one-third (1/3) share of what I had determined
> to be the marital estate.

(DX III 2 at ¶¶ 4, 5, 6.)

[part because] the district court should not have considered the trial judge's post-decision

statements concerning the influence various facts had on his decision.  The judge's testimony

was not limited to matters of basic, historical fact but directly addressed the effect of the

psychiatric evidence on his sentencing decision.  Such post-decision statements by a judge or

juror about his mental processes in reaching [a] decision may not be used as evidence in a

subsequent challenge to the decision."); *Strickland v. Washington*, 693 F.2d 1243, 1263 (5th Cir.

1982) ("It is a firmly established rule in our jurisprudence that a judge may not be asked to testify

about his mental processes in rendering a judicial decision."), *rev'd on other grounds*, 466 U.S.

668 (1984); *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 696 (N.D. Ga. 1983) ("The

affidavit testimony of [a judge] concerning his mental impressions of a party to a trial which

occurred eight years ago is not admissible evidence and therefore may not be considered.");

*Glenn v. Aiken*, 569 N.E. 2d 783, 786 (Mass. 1991) (concluding that the affidavit of the trial

judge did not support the grant of summary judgment in favor of the defendant, that the issue

involved in the case must be decided on an objective basis, and that the after-the-fact conclusion

of the trial judge was irrelevant); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*,

848 P. 2d 1086, 1092 (N.M. App. Ct. 1993) ("Respect for the finality of judgments makes resort

to judicial affidavits particularly inappropriate when the purpose is to 'state the secret and

unexpressed reasons which actuated' a judgment.") , *cert. denied*, 846 P.2d 1069 (N.M. 1993).

Prohibiting a judge's testimony regarding his mental processes at the time of a decision

serves a number of purposes, including avoiding unfair prejudice to the opposing party, averting

the difficulty inherent in accurately recreating a mental process, eschewing the appearance of any

impropriety generated by such testimony, and maintaining the solemnity of the record of a

14

decision.  In order to protect the integrity and finality of judgments and orders, the court is of the

opinion that questions relating to JudgeTompkins's mental process in writing the decree and

what he *meant* by the words utilized in the decree must be prohibited.

**B.**   **Divorce Decree Represents Release of Future Litigation**

As noted above, the Circuit Court of Colbert County, Alabama entered a divorce decree

on March 17, 1998, terminating the marriage of Jerry James and Sonja James.  The divorce

decree provided:

> It is further ORDERED, ADJUDGED, AND DECREED by the court that all
> properties consisting of stock, corporations, land, personal property and anything
> other than cash shall be sold by private sale or public auction, and this Court is to
> be informed within 30 days of the date of this Order.

(PX I A at unnumbered 3; DX I B at unnumbered 3.)  The decree further stated:

> It is further ORDERED, ADJUDGED, AND DECREED by the Court that all
> remaining monies which shall consist of any savings accounts, retirement
> accounts, IRA's or otherwise, one-third (1/3) of the same shall be paid to Sonja
> M. James for a **full and complete settlement of all claims by her against Jerry
> James, which shall include all past, present, or future alimony**.

(*Id.*) (emphasis added.)  Mr. James asserts that "[t]he final Decree constitutes a general release

clause such that any property or, claims of entitlement not enumerated in the Decree are not

subject to later litigation.  (Pl.'s Br. in Opposition at 6-7.)  Mr. James further argues that because

Ms. James "knew of the suit at the time of negotiation and execution of the Final Decree, [but]

deigned to include any mention or reference to the pending litigation in the final Decree," (*id.* at

5), the final divorce decree represents a release of all later litigation, (*id.* at 5-8).

The situation in this case is analogous to that in *Coleman v. Coleman*, 556 So. 2d 482

(Ala. 1990), in which the Alabama Supreme Court affirmed the trial court's grant of summary

15

judgment in favor of the husband on the wife's claim arising out of a venereal disease she alleged

to have contracted from her husband during the marriage. In *Coleman,* the court noted that the

wife was aware of the claim at the time of the divorce action, she had conducted discovery

relating to whether the husband had a venereal disease, testimony was presented at trial regarding

the disease, and the wife used the disease in an attempt to increase her settlement award during

the settlement negotiations. *Id.* at 485. The Alabama Supreme Court stated:

> We agree with the trial court that to allow the [wife] to use the fact that she may
> have been infected with a venereal disease by her husband as leverage in her
> divorce settlement, and then to permit her to bring a subsequent tort action, would
> seriously undermine the settlement of divorce actions in the future. To do so
> would, in the trial court's words, "cause confusion and lead to fraud, potential
> ambush, [and] a play on words within the settlement."

*Id.* The court also suggested that, in order to preserve future claims or any known claims, the

spouse should expressly reserve those claims from the settlement or file a counterclaim with a

demand for damages based on those claims. *Id.*

Similar to the wife in *Coleman*, Ms. James knew of the pending litigation and possible

award at the time of negotiation and execution of the divorce decree, but failed to include it or

reference it as potential property of the marital estate.[7]  Rather, based on her expert's valuation,

Ms. James requested two million dollars for Indies stock. (*See* PX II A at 291-98; PX II B at 8.)

The expert's testimony did not rely on an expected judgment in Mr. James's favor in the

---

[7] The court notes that Ms. James's attorney in the present case represented Thomas
James in the shareholder action, and Ms. James testified for Thomas James in the shareholder
action. (*See* DX III 7-9; PX I K.) Testimony regarding the pending shareholder action was
before the divorce court. (*See* PX II A at 89, 221-37, 248, 467-69.) In her post-trial brief
submitted to the divorce court, Ms. James did not itemize or mention the potential judgment in
the list of marital property to which she was claiming entitlement. (*See* PX II B at 8.) All parties
involved, including the judge presiding over the divorce action, knew of the pending shareholder
action, but never referenced or included it as a marital asset.

shareholder action. (*See* PX II A at 294-95, 298-307, 324-27.) Ms. James did not reserve a right

to claim entitlement to any future proceeds, either relating to Mr. James's individual claims or to

the derivative claims.

Further, even though the divorce court was aware of and heard testimony concerning the

pending shareholder action, nowhere in the divorce decree did the court expressly or impliedly

state that Ms. James was entitled to any potential interest in or proceeds from the pending

shareholder action. The divorce decree does not list, mention, or in any way refer to the right to

receive proceeds from any future judgment as an asset of the parties. (*See* PX I A; DX I B ("The

Court further finds that the properties owned by the parties consist of money, personal property,

stocks in corporations, and real estate.").) Ms. James did not appeal the trial court's decree on

the ground that the decree failed to include a possible judgment in the pending shareholder

litigation. As the court noted in *Coleman*:

> If a party does not intend a settlement of all known claims, then the burden must
> be placed on such party to expressly reserve such claim from the settlement or to
> file and serve a separate cause of action on their spouse prior to the execution of
> such settlement agreement whereby the opposing spouse has notice that the
> settlement agreement is no more than a partial settlement of their disputes.

*Coleman,* 566 So. 2d at 484.

The right to share in any proceeds from the judgment was a claim of which Ms. James

had knowledge and could have raised in her divorce proceedings and during the trial on her right

to receive alimony in gross. Because she was aware of the claim and failed to assert it, she

cannot now claim an interest in the proceeds. Further, because the divorce decree did not reserve

a right for Ms. James to claim entitlement to any future judgment, and because Ms. James did not

request such a right, she released any future claim to the judgment proceeds from the shareholder

17

action.  The court is of the opinion that the final divorce decree represents a release from further litigation pertaining to the judgment proceeds in the shareholder action.

**C.      Collateral Attack, Res Judicata, and Collateral Estoppel**

Ms. James asserts that "because these issues have already been litigated between the parties, Jerry's collateral attack on that judgment is barred by *res judicata* and collateral estoppel." (Def.'s Br. in Opposition at 12.)  Mr. James asserts that defendant's claim of entitlement to the proceeds of the judgment is an impermissible attack on a valid judgment, and that such claim is barred by the doctrines of res judicata and collateral estoppel.  (Pl.'s Reply in Support at 5-6.)  Further, Mr. James asserts that "[c]ontrary to the Wife's argument, the Husband is not collaterally attacking the divorce decree, but instead, by filing this declaratory judgment action, the Husband is seeking a judgment declaring that the divorce decree did not and could not have included a piece of after-acquired property."  (*Id.* at 6.)  The court agrees with plaintiff's contention.

*1.      Collateral Attack on a Valid Judgment*

"A domestic judgment regular on its face is immune from collateral attack." *Ex parte Edmondson,* 451 So. 2d 290, 293 (Ala. 1984).  If a judgment is rendered by a court with jurisdiction over both the matter and the parties, and the court has the power to render that judgment, then that judgment is patently immune from collateral attack[8] in a subsequent

---

[8] The Alabama Supreme Court has distinguished collateral and direct attacks upon prior judgments. *See Williams v. First National Bank of Mobile,* 384 So. 2d 89, 93 (Ala. 1980) (citing *Williams v. Overcast*, 155 So. 543 (1934)).  The court "opined that a direct attack upon a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of that judgment in a proceeding instituted for that purpose, and that a collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted in an attempt to amend, correct, reform, vacate or enjoin its execution." *Id.*

proceeding. *State ex rel. Head,* 506 So. 2d 1010, 1012 (Ala. Civ. App. 1987) (preventing a party

from challenging a paternity decision in a subsequent proceeding for child support); *see also*

*Greene v. Thompson,* 554 So. 2d 376, 380 (Ala. 1989) ("It is well settled in Alabama that the

judgment of a court that has jurisdiction of the subject matter and the parties and possesses the

power to render the particular judgment is immune from collateral attack."); *Evans v. Waddell,*

689 So. 2d 23, 31 (Ala. 1997) ("[I]nasmuch as these fraud counts, filed in the Dale Circuit Court,

seek to modify provisions of the divorce judgment entered in the Houston Circuit Court, it is an

improper collateral attack on that final judgment. . . .  A Rule 60(b), Ala.R.Civ.P., motion filed in

the Houston Circuit Court would be the proper means for [plaintiff] to attempt to challenge the

terms of his divorce judgment."); *Otto v. Guthrie,* 475 So. 2d 856, 859 (Ala. 1985) (noting that a

"judgment which is regular on its face and indicates subject matter and personal jurisdiction is

conclusive on collateral attack," and concluding that where district court issued final order from

which an aggrieved party could have appealed and neither party to the action appealed, the

subsequent action by three of the parties constituted a collateral attack on the final judgment of

the district court).

     As noted above, the divorce decree does not purport to give Ms. James any entitlement to

future proceeds from the shareholder action. Ms. James is seeking to change the provisions of

the divorce decree entered in the Circuit Court of Colbert County.  This court cannot now rewrite

the divorce decree to support Ms. James's contentions.  The court is of the opinion that Ms.

James's claim of entitlement to and garnishment of the judgment proceeds constitutes an

improper collateral attack on the divorce decree entered by the circuit court.

19

2.      *Collateral Estoppel*

Collateral estoppel, or issue preclusion, prohibits the relitigation of issues that have been

adjudicated in a prior lawsuit. *I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549

(11th Cir. 1986).  Collateral estoppel, or issue preclusion, operates where the subsequent suit

between the same parties is not on the same cause of action. *See Stevenson v. International*

*Paper Co.,* 516 F.2d 103, 109 (5th Cir. 1975).  However, collateral estoppel only applies if the

following elements are present:

> (1)    the issue at stake must be identical to the one involved in the prior
>        litigation;
> (2)    the issue must have been actually litigated in the prior suit;
> (3)    the determination of the issue in the prior litigation must have been a critical and
>        necessary part of the judgment in that action; and
> (4)    the party against whom the earlier decision is asserted must have had a full and
>        fair opportunity to litigate the issue in the earlier proceeding.

*In the Matter of McWhorter,* 887 F.2d 1564, 1566 (11th Cir. 1989) (citing *I.A. Durbin,* 793 F.2d

at 1549).  "If these elements are present, the prior judgment is conclusive as to those issues

actually determined in the prior suit." *Campbell v. Campbell,* 561 So. 2d 1060, 1061 (Ala. 1990)

(citing *Wheeler v. First Alabama Bank of Birmingham,* 364 So. 2d 1190, 1199 (Ala. 1978) and

*Gulf American Fire & Casualty Co. v. Johnson,* 209 So. 2d 212 (Ala. 1968)).  "Whether

collateral estoppel is available is a mixed question of law and fact in which the legal issues

predominate." *McWhorter,* 887 F.2d at 1566.

The requirements for collateral estoppel are not met here.  As noted above, for collateral

estoppel to apply, the issue must have been actually litigated in the prior action.  Although there

was testimony in the divorce proceeding regarding the pending shareholder action, (*see* PX II A

at 89, 221-37, 248, 467-69), Ms. James did not mention, itemize, or refer to the pending

20

shareholder action in the list she submitted to the divorce court of the marital property to which she was claiming entitlement, (PX II B at 8). Thus, the court did not award potential proceeds from shareholder action to Ms. James. Therefore, the court is of the opinion that the issue was not actually litigated in the previous action.

### 3. *Res Judicata*

Res judicata, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit. *See Nevada v. United States*, 463 U.S. 110, 129-30 (1983). The doctrine of "res judicata" is intended to provide consistency and continuity in the law. *Owen v. Miller,* 414 So. 2d 889, 890 (Ala. 1982). The policy behind the doctrine of res judicata is that "there be an end to litigation." *Id.* (quoting *Reed v. Allen*, 286 U.S. 191, 198-99 (1932)) (quotation marks omitted). As the United States Supreme Court noted:

> Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The final judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.

*Nevada,* 463 U.S. at 129-30. Further, "[j]udicial finality--the predicate for res judicata --arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction." *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir. 1984) (citing *Kaspar Wire Works, Inc. v. Leco Engineering & Machinery*, 575 F.2d 530, 537- 38 (5th Cir. 1978)).

Federal courts apply state law to questions of res judicata. *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990). Under Alabama law, four elements are necessary for the doctrine's

application:

    (1)   a prior judgment on the merits,
    (2)   rendered by a court of competent jurisdiction,
    (3)   with substantial identity of parties, and
    (4)   with the same cause of action presented in both suits.

*Id.* (quoting *Hughes v. Allenstein*, 514 So. 2d 858 (Ala.1987)).  If all of the elements are present,

any claim that was or could have been adjudicated in the previous action is precluded.  *Id.*; *see*

*also Heiser v. Woodruff*, 327 U.S. 726, 735 (1946) ("In general a judgment is res judicata not

only as to all matters litigated and decided by it, but as to all relevant issues which could have

been but were not raised and litigated in the suit.") (citations omitted).  If even one of these

elements is missing, res judicata is inapplicable.  *Hunt,* 891 F.2d at 1560.

      As noted above, even if a particular claim was not litigated in the prior action, res judicata

will still bar the later action if the claim could have been litigated in the prior action and the four

elements are present.  There is no question that the judgment in the divorce proceeding was a

prior judgment on the merits rendered by a court of competent jurisdiction and involved the same

parties.  The issue in this case is whether the same cause of action is present in both suits.

      "Definitions of what constitutes the 'same cause of action' have not remained static over

time."  *Nevada,* 463 U.S. at 130.  In fact, the cases have articulated a number of different tests by

which a court is to determine whether the causes of action in two proceedings are the same.  A

number of cases have stated that the principal test for determining whether the causes of action in

two proceedings are sufficiently similar is the "primary right test."  *See, e.g., Hunt,* 891 F.2d at

1561; *Womack v. American Telephone & Telegraph Co.,* 982 F. Supp. 1460, 1463 (M.D. Ala.

1997); *Old Republic Ins. Co. v. Lanier,* 2000 WL 681087, at * 6 (Ala. May 26, 2000).  Under

this test, causes of action are deemed the same if the primary right or duty that is asserted is the same in each cause of action. *Hunt,* 891 F.2d at 1561; *Womack,* 982 F. Supp. at 1463; *Lanier,* at * 6. Furthermore, "[i]n determining whether the causes of actions are the same, a court must compare the substance of the actions, not their form." *I.A. Durbin, Inc.,* 793 F.2d at 1549. Thus, under this test, the doctrine of res judicata bars all subsequent suits raising allegedly new theories, unless a substantial change in the underlying facts or law has transpired. *Jaffree v. Wallace,* 837 F.2d 1461, 1469 (11th Cir. 1988) (quoting *Jackson v. DeSoto Parish School Bd.,* 585 F.2d 726, 729 (5th Cir. 1978)).

Courts have also applied the "same evidence" test to determine whether two causes of action are sufficiently similar. Under this test, the court looks to whether "substantially the same evidence" supports both actions. *See, e.g., Wheeler*, 364 So.2d at 1200 ("The presence of the fourth element of res judicata, that each suit is based on the same cause of action, depends upon whether substantially the same evidence supports both actions."); *Braggs v. Jim Skinner Ford, Inc.*, 432 So. 2d 466, 469 (Ala.1983) ("The 'same evidence' test can be employed to illustrate the fact that plaintiff's suits are founded on separate causes of action. The best and perhaps most invariable test as to whether a former judgment is a bar is to inquire whether the same evidence will sustain both the present and the former action."); *see also Dominex, Inc. v. Key*, 456 So. 2d 1047, 1054 (Ala.1984) (the determination as to whether two causes of action are the same depends on "whether the issues in the two suits are the same and whether the same evidence would support a recovery in both suits"); *Buck Creek Indus., Inc. v. Alcon Construction, Inc.*, 631 F.2d 75, 78 (5th Cir. 1980) ("Under Alabama law, and under common law generally, a cause of action in one case is the same as that in a second case if the evidence needed to sustain the

23

second action would also have sustained the first action.").

Additionally, some courts have adopted the "series of connected transactions" test in comparing causes of action. *See, Jackson v. United Postal Service,* 799 F.2d 1018, 1021 (5th Cir. 1986) (noting that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action, but expressing a preference for the test articulated in Restatement (Second) of Judgments § 24, in which a court determines if the two claims arise from the same "series of connected transactions").

As noted above, in determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. *See, e.g., I.A. Durbin, Inc.,* 793 F.2d at 1549. The court finds it unnecessary to examine any slight differences which the above tests might produce, because whatever test is applied, the only conclusion allowed by the record in the divorce action is that Ms. James was given an opportunity to claim and litigate every alleged marital asset to which she was entitled. The right to share in any proceeds from the shareholder action was a claim of which Ms. James had knowledge and could have raised in her divorce proceedings. Clearly, Ms. James had the opportunity to claim entitlement to any future judgment proceeds.  If Ms. James wanted to claim an interest in any future proceeds of the shareholder action, she should have made such claim along with the claims she asserted in the divorce action. The final divorce decree reflects that the decree was intended by the court and the parties to be a final settlement of all claims.  The divorce decree rendered by the Circuit Court of Colbert County is final and conclusive as to the property distribution and rights of each party. Because Ms. James was aware of the claim and failed to assert it, the claim is barred by res judicata.

**D.    Trial Court's Award of Judgment to the Husband Individually**

Ms. James argues that "because the domestic court specifically awarded Sonja one-third

of the value of the marital estate (including Jerry's stock in Indies House), and the judgment

compensated Jerry for the diminished value of that stock, Sonja is entitled to one-third of that

judgment." (Def.'s Br. in Opposition at 7–8.) Plaintiff argues that Ms. James waived any further

claim to a judgment in the shareholder action because she allegedly testified against her husband

in the shareholder action. (*See* Pl.'s Reply in Support at 9-10; Pl.'s Br. in Opposition at 16-17.)

While the court is unwilling to conclude that Ms. James testimony against Mr. James in the

shareholder action constituted a waiver of any interest in any future judgment rendered in that

action, the court agrees with Mr. James's assertion that the judgment in the shareholder action

belongs to him personally and not to the corporation. In the shareholder action, Mr. James

asserted both individual and derivative claims against Thomas James.[9] The trial court rendered

judgment in favor of Mr. James individually, and not the underlying corporation. *See James,* 768

So. 2d at 357-58, 361. Further, Mr. James was awarded compensatory damages for his portion of

the total loss the corporation suffered, not stock in the corporation. *Id.* Thomas James argued on

appeal that Mr. James's claims were really derivative, and, thus, the corporation and not Mr.

James was entitled to the damages. *See id.* at 358. The Alabama Supreme Court recognized that,

ordinarily, Mr. James's claims should have been derivative; however, the court held that it was

more equitable under the circumstances of the case to award the damages directly to Mr. James.

*See id.* at 359-60. Therefore, the court affirmed the judgment of the trial court awarding damages

---

[9] As noted above, Ms. James did not reserve a right to claim entitlement to any future
proceeds, either relating to the individual claims or to the derivative claims.

to Mr. James individually. *See id.* at 361.   The proceeds never became an asset of the corporation.  Thus, the judgment belongs to Mr. James personally and not the corporation, and Ms. James has no claim to these judgment proceeds under the divorce decree.

**E.      Mere Expectancy Falls Outside Marital Property and is Not Subject to Division**

Plaintiff alleges that the judgment in the shareholder action constitutes a mere expectancy of future property or earnings and, therefore, falls outside the marital estate. (*See* Pl.'s Br. in Opposition at 8-15.)  Further, plaintiff argues:

> Despite the Wife's attempt to characterize the facts otherwise, the Judgment that was awarded to the Husband as a result of injury to Indies House was not awarded until seven (7) months after the Decree was issued[.]  [T]herefore, the fruits of that Judgment were obviously never regularly used for the common benefit of the parties during the marriage.  Thus, the claim is not within the statute defining marital property.

(Pl.'s Reply in Support at 8) (emphasis in original.)  Defendant alleges that the judgment is a marital asset and subject to division because (1) "[t]he divorce court determined that the *stock* in Indies House had been used for the common benefit of the parties, and ordered an equitable division of its value;" (2) "[b]ecause the judgment (or, at the time of the decree, the pending cause of action) was an asset of Indies House, it was in effect used for the "common benefit" of the parties;" (3) "the cause of action arose and the derivative action was filed in March of 1995, *more than a year prior to the filing of the complaint for divorce*;" and (4) "the derivative action concerned funds that were removed from the corporation *during the term of the marriage*." (Def.'s Br. in Opposition at 19) (emphasis in original.)

Alabama Code § 30-2-51, regarding allowances to spouses at the time a divorce is granted, provides:

26

(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.

In distributing marital property under this section, courts have concluded that a mere expectancy at the time of the divorce decree is not subject to inclusion in the marital estate. *See, e.g., Malone v. Malone,* 563 So. 2d 1061, 1062 (Ala. Civ. App. 1990). In rejecting the wife's argument that she was entitled to an interest in a broadcasting license that might be obtained by her husband, the court in *Malone* concluded:

[T]here is no guarantee that [the] application will be granted. Furthermore, at the time of [the] divorce, [the husband] possessed no enforceable right to, nor did he have any vested interest in, such a license. Therefore, we find that the circuit court erred in construing *any future grant* of a broadcasting license to be marital property subject to division.

*Id.* at 1062-63 (emphasis added). Other courts have reached similar conclusions. *See Jones v. Jones,* 454 So. 2d 1006, 1008-09 (Ala. Civ. App. 1984) (possession of a professional degree constituted speculative, unascertained asset and was not part of the marital estate); *Roberts v. Roberts,* 689 So. 2d 378, 380 (Fla. Dist. Ct. App. 1997) (pending contingency fee cases in husband's law office were properly not included in the distribution of marital property because (1) the husband had neither the right to receive the contingent fee nor any assurance that he would ever receive it; (2) the ultimate value of the fee depended on the amount of the award or settlement in the case and was therefore highly speculative; and (3) the worth of the fee to an attorney remained intangible until the firm actually received consideration for services rendered);

27

*Branson v. Branson,* 411 N.W. 2d 395, 397 (N.D. 1987) (affirming trial court's ruling that future

government farm support payments were speculative and, therefore, not subject to division under

the marital estate); *Heggen v. Heggen,* 452 N.W. 2d 96, 101 (N.D. 1990) (potential drought

assistance payments are speculative in nature not divisible as part of the marital estate); *Cobb v.

Cobb,* 420 S.E. 2d 212, 214 (N.C. Ct. App. 1997) (potential or future value of timber on land that

was determined to be marital property was not subject to the terms of the division on the marital

estate because the value of the timber did not vest during the terms of the marriage).

Here, at the time the divorce decree was entered, the resolution of the shareholder action

was speculative because, not only was an award of damages to Mr. James uncertain, but Thomas

James had also filed a counterclaim against Mr. James alleging breach of fiduciary duty,

oppression, and mismanagement.  Although Mr. James was ultimately victorious in the

shareholder action, he could have ended up owing Thomas James.  As other courts have noted,

"[t]he concern with valuing this intangible is substantially increased with the realization that

property distributions become final and are not subject to alteration upon a change in

circumstances.  If the [holder of the intangible property] fails to live up to the court's

expectations, the finality of property distribution precludes any remedy." *Hughes v. Hughes,* 438

So. 2d 146, 148 (Fla. Dist. Ct. App. 1997).

At the time of the divorce action and the divorce decree, the judgment proceeds from the

shareholder action constituted a speculative, unascertained asset, which had not been used for the

common benefit of the marriage.[10]  In fact, the judgment was not awarded until approximately

---

[10]  The court notes that Ms. James was not willing to share in the costs of the litigation,
she did not try to intervene in the action in order to protect any interests she might have in the
outcome, and she, in fact, testified against Mr. James in the shareholder action.  (*See* DX II 8.)

seven months after the divorce decree was issued.  (*See* PX I A; DX I B; DX I H.)  Therefore, at

the time the divorce decree was entered, the judgment proceeds were not part of the marital estate

and were not subject to the terms of the division of the marital estate.

## IV.   CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff Jerry James is entitled

to judgment as a matter of law.[11]  An order granting plaintiff's Motion for Summary Judgment

---

[11]  Plaintiff also seeks "an award of attorney fees under Rule 11 of the Alabama Rules of Civil Procedure for the willful abuse of process for filing wrongful garnishments."(Petition for Declaratory Judgment, Count IV.)  "Unlike its counterpart in the Federal Rules of Civil Procedure, Alabama's Rule 11 does not provide for the imposition of attorney fees and expenses as a penalty for its violation."  *Williams v. Board of Water and Sewer Commissioners of the City of Pritchard,* 763 So. 2d 938, 942 (Ala. 2000) (citing C. Lyons, Alabama Rules of Civil Procedure Annotated § 11.6 (3d ed.1996)).   In Alabama, a trial court must look to the Alabama Litigation Accountability Act, §§ 12-19-270 to -276, Ala.Code 1975 ("the ALAA"), for authority to award attorney fees and costs against an attorney or a party.  Section 12- 19-272(a) of the ALAA states:

> Except as otherwise provided in this article, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part.

"Before a trial court can assess attorney fees and costs against an attorney or a party pursuant to the ALAA, it must first determine that an action, claim, or defense is 'without substantial justification.'"  *Williams,* at 942 (quoting *Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp.,* 614 So. 2d 409, 417 (Ala.1993)).  The court is of the opinion that defendant's counsel did not violate Alabama Rule of Civil Procedure 11 when he filed the garnishments, and, therefore, no award of no award of attorneys fees is due plaintiff's counsel.

and denying defendant's Motion for Summary Judgment will be entered contemporaneously with

this Memorandum Opinion.

      **DONE** this _____ day of August, 2001.


                                _____

                                SHARON LOVELACE BLACKBURN
                                United States District Judge